UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,

   v.

SUMMIT CONTRACTING, INC.,

                Defendant.

Case No. 23-CR-164

---

# PLEA AGREEMENT

---

    1.    The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, Daniel R. Humble and Julie F. Stewart, Assistant United States Attorneys, and the defendant, Summit Contracting, Inc., individually and by attorneys Brandon G. O'Bryon, Brian T. Fahl, and Mark P. Maciolek pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

    2.    The defendant, a corporation, has been charged in a single-count information which charges a violation of Title 18, United States Code, Section 1343. The defendant agrees to plead guilty to charge in the information.

    3.    The defendant, by its duly authorized representative, has read and fully understands the charges contained in the information. The defendant, through its duly authorized representative, fully understands the nature and elements of the crimes with which the defendant-corporation has been charged. In addition, the terms and conditions of the plea agreement have been fully explained to the defendant's authorized representative by its attorney.

4.     The defendant, by its duly authorized representative, voluntarily agrees to plead guilty to the information, set forth in full as follows:

**THE UNITED STATES ATTORNEY CHARGES THAT**:

1.     Beginning in 2018 and continuing through at least January 8, 2020, in the State and Eastern District of Wisconsin and elsewhere,

**SUMMIT CONTRACTING, INC.**

knowingly devised and carried out a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises (the "scheme"), which scheme is described more fully below.

### The Scheme

2.     It was part of the scheme that:

   a.    Summit Contracting, Inc. ("Summit") sought out home improvement customer leads via television advertisements, promotional booths at local sporting events, home improvement shows, and internet-based advertisements.

   b.    Summit employees scheduled sales appointments in prospective customers' homes. Sales representatives, working for the benefit of the corporation, utilized high pressure, deceptive tactics and false statements to induce prospective customers to retain Summit for their home improvement project.

   c.    Summit employees pressured prospective customers to finance their projects using Summit's chosen financial institutions, EnerBank and GreenSky.

   d.    Summit sales representatives induced customers to apply for financing by misrepresenting the terms of the financing being offered.

e. Summit sales representatives utilized electronic devices and tablets to immediately process, at the initial sales meeting, via the interstate wires, financing applications with EnerBank and GreenSky.

f. Summit employees, working for the benefit of the corporation, fraudulently induced customers to sign paperwork falsely acknowledging that Summit had completed work on a project when Summit had not even begun work on the project and subsequently used those false acknowledgments, contrary to the terms of the agreements between Summit, Enerbank, GreenSky, to withdraw funds from customer's financing accounts prior to beginning any work.

g. Summit sales representatives falsely told customers and potential customers that Summit did not use subcontractors when, in fact, a majority of Summit's work was performed by subcontractors.

On or about January 8, 2020, in the State and Eastern District of Wisconsin and elsewhere,

**SUMMIT CONTRACTING, INC.,**

for the purpose of executing the scheme and attempting to do so, knowingly caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures, and sounds resulting in a transfer of funds by B.K. in the amount of $6,500 which Summit then converted for its own use without ever providing a service.

All in violation of Title 18, United States Code, Section 1343.

**Stipulation of Facts**

5. The defendant, by its duly authorized representative, acknowledges, understands, and agrees that the defendant is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government

3

would be able to prove the following facts beyond a reasonable doubt, and the defendant admits that these facts are true and correct and establish its guilt beyond a reasonable doubt:

Summit Contracting, Inc. ("Summit") was in the business of home improvement. As part of its business model, Summit sought out customers via television advertisements, promotional booths at local sporting events, home improvement shows, and internet-based advertisements. Summit engaged a one-sit-close sales model in which Summit sales associates provided an estimate and sought to obtain a signed contract with a customer during the same meeting. Summit sales representatives sold its services via false representations, including for example, that Summit had been in business since 2007 and that it did not utilize subcontractors. In fact, Summit was not incorporated until 2018 and many of its projects were completed by subcontractors. Summit's one-sit-close model encouraged sales associates—who worked for 100% commission—to engage in high-pressure tactics by, for example, telling customers that quotes would expire if the sales associate left the home without a signed contract, that it could not leave a copy of the estimate for the customer, or that it could not offer the favorable financing terms if the customer did not sign a contract on the same day.

Summit sales associates also encouraged customers to finance their projects rather than pay for them in cash, knowing that financing projects would relieve Summit of pursuing customers for payments. Summit pressured customers to use financing because Summit engaged in a practice of withdrawing most or all of the financed funds before completing a project. In order to get customers to use Summit's chosen financial partners for financing, Summit sales associates misrepresented the financing terms and the documents the customers were signing. For example, on some occasions Summit employees would falsely represent to potential customers that Summit was offering zero percent interest financing when, in fact, Summit knew that the terms of the financing were variable and would be determined by the financing partners. On other occasions, Summit representatives falsely told customers that they were filling out paperwork to determine their eligibility for financing when, in fact, the customer was applying for, and agreeing to, take out a loan for their home contracting project. On yet other occasions, Summit sales representatives falsely represented that customers were signing financing paperwork when, in fact, customers were signing documentation that falsely represented that Summit had completed the work and that the customer was satisfied. These forms were signed by customers, at Summit's insistence, even though Summit had not even begun the project. Summit sales associates obtained these signatures, under false pretenses, so that Summit could withdraw the customers' funds prior to completing the work and/or without completing the work.

These fraudulent practices resulted in numerous customers of Summit Contracting who did not receive the work for which they contracted and paid. Some of these customers had to spend additional funds to fix their homes as a result of Summit's substandard and incomplete work. In other instances, no work was completed at all. These customers suffered damages in the amount of $89,791.15.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a guilty plea carries a maximum fine of $500,000 under Title 18, United States Code, Section 3571(c)(3) and a mandatory special assessment of $400 pursuant to Title 18, United States Code, Section 3013(a)(2)(B). The parties' acknowledgements and understandings with regard to restitution are addressed in paragraph 17 of this agreement.

7. The defendant, by its duly authorized representatives, acknowledges, understands, and agrees that it has discussed the relevant statutes as well as the applicable sentencing guidelines with its attorney.

## ELEMENTS

8. The parties understand and agree that, in order to sustain the charge of wire fraud in violation of Title 18, United States Code, Section 1343, as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

First, that the defendant knowingly devised and participated in the scheme to defraud described in the information;

Second, that the defendant did so knowingly and with the intent to defraud;

Third, that the scheme involved material misrepresentations or the concealment of material facts; and

Fourth, that for the purpose of carrying out the scheme, the defendant caused interstate wire communications to take place in the manner charged in the count under consideration.

(A corporation can be held vicariously criminally liable for the acts, omissions, or failures of employees acting as agents. The nature of incorporeal legal entities requires courts to look to employees of the corporation as a means of imputing mens rea, defined as "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when

5

committing a crime," as well as the guilty act (or actus reus), to the corporation. Courts hold a corporation vicariously liable for the acts of its employee if: (A) the individual acted within the scope and nature of his employment; (B) the individual acted, at least in part, to benefit the corporation; and (C) the act and intent of the individual can be imputed to the corporation.)

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

### Sentencing Recommendations

11. The parties agree that the appropriate disposition of this case is, and agree to recommend jointly that the court impose, the following sentence: Summit Contracting, Inc. will be required to pay restitution in the amount of $89,791.15 prior to expiration of any term of probation the Court imposes. The parties' understanding and agreement with regard to restitution is further detailed in paragraph 17 of this agreement.

### Court's Determinations at Sentencing

12. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office may make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the

imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range, subject to the statutory maximum.

13. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## **FINANCIAL MATTERS**

14. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

15. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### **Special Assessment**

16. The defendant agrees to pay the special assessment in the amount of $400 prior to or at the time of sentencing.

## Restitution

17. The defendant agrees to pay restitution in the amount of $89,791.15. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation and specifically according to the terms of the guaranty described in Attachment A. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

18. In entering this agreement, the defendant acknowledges and understands that it surrenders any claims it may have raised in any pretrial motion, as well as certain rights, which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against it, the defendant would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial were to be a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial were to be held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant

8

would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction, and the defendant would have the right to cross-examine those witnesses. In turn the defendant could, but would not be obligated to, present witnesses and other evidence on its own behalf. The defendant would be entitled to compulsory process to call witnesses.

19. The defendant, by its duly authorized representative, acknowledges and understands that by pleading guilty it is waiving all the rights set forth above. The defendant further acknowledges the fact that its attorney has explained these rights to the defendant's authorized representative and the consequences of its waiver of these rights. The defendant further acknowledges that, as a part of the guilty plea hearing, the court may question the defendant's authorized representative, under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

20. The defendant, by its duly authorized representative, knowingly and voluntarily waives all claims it may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

21. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim

9

that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statute or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily, (5) a claim that the restitution ordered was excessive or unlawful in light of the agreed upon restitution.

### Further Civil or Administrative Action

22. The defendant, by its duly authorized representative, acknowledges, understands, and agrees that the defendant's duly authorized representative has discussed with the defendant's attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

23. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

24. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

25. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

26. The defendant, by its duly authorized representative, understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

27. The defendant, by its duly authorized representative, acknowledges and understands if the defendant violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter with respect to this defendant. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

28. The defendant, by its duly authorized representative, acknowledges, understands, and agrees that the defendant will plead guilty freely and voluntarily because the defendant is in fact guilty. The defendant, by its duly authorized representative, further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

# ACKNOWLEDGMENTS

I am the duly authorized representative of the defendant, Summit Contracting, Inc. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: Sep 7, 2023

*chad schampers (Sep 7, 2023 15:59 CDT)*
CHAD M. SCHAMPERS
Owner/Operator
Summit Contracting, Inc.
Defendant

Date: Sep 7, 2023

*Nate Smith (Sep 7, 2023 15:58 CDT)*
NATHANIEL R. SMITH
Owner/Operator
Summit Contracting, Inc.
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: Sep 7, 2023

Brandon G. O'Bryon
Attorney for Summit Contracting, Inc.

Date: 9/7/27

BRIAN T. FAHL
Attorney for Nathaniel R. Smith

Date: 9/7/23

MARK P. MACIOLEK
Attorney for Chad M. Schampers

13

For the United States of America:

Date: 9/7/23

_____
GREGORY J. HAANSTAD
United States Attorney

Date: 9/7/23

_____
DANIEL R. HUMBLE
Assistant United States Attorney